**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION**

| | | |
|---|---|---|
| XODUS MEDICAL, INC.,<br>ALESSIO PIGAZZI, and GLENN KEILAR,<br><br>Plaintiffs,<br><br>v.<br><br>PRIME MEDICAL, LLC., and<br>SYMMETRY SURGICAL INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:18-cv-413-JPM |
| XODUS MEDICAL, INC.,<br>ALESSIO PIGAZZI, and GLENN KEILAR,<br><br>Plaintiffs,<br><br>v.<br><br>PRIME MEDICAL, LLC., and<br>SYMMETRY SURGICAL INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:18-cv-414-JPM |
| XODUS MEDICAL, INC.,<br>ALESSIO PIGAZZI, and GLENN KEILAR,<br><br>Plaintiffs,<br><br>v.<br><br>G&T INDUSTRIES, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:18-cv-415-JPM |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND
GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendants Prime Medical LLC, Symmetry Surgical Inc., and G&T Industries, Inc.'s Motion for Partial Summary Judgment of Non-Infringement, filed on October 15, 2021. (ECF No. 237.)[1] Plaintiffs filed a Response in Opposition on November 19, 2021. (ECF No. 305.) Defendants filed a Reply on December 2, 2021. (ECF No. 324.) For the reasons discussed below, the Court **GRANTS** Defendants' Motion as to Defendants' direct infringement of the asserted method claims and **DENIES** Defendants' Motion as to induced infringement. The issue of induced infringement remains before the trier of fact.

Also before the Court is Plaintiffs' Motion for Partial Summary Judgment, filed on October 15, 2021. (ECF No. 245.) Plaintiffs also filed a Memorandum in Support. (ECF No. 246.) Defendants filed a Response in Opposition on November 16, 2021. (ECF No. 291.) Plaintiffs filed a Reply on November 19, 2021. (ECF No. 307.) For the reasons discussed below, the Court **DENIES** Plaintiffs' Motion as to infringement, **DENIES AS MOOT** Plaintiffs' Motion as to anticipation, and **GRANTS** Plaintiffs' Motion as to indefiniteness. The issue of Defendants' infringement of the asserted apparatus claims remains before the trier of fact.

## I.     BACKGROUND

The background of these three cases is provided in this Court's Claim Construction Order. (ECF No. 138.) This background is quoted below:

> This consolidated patent action concerns devices for positioning a patient at an angle during surgery. Three patents are at issue. (ECF No. 79 at PageID 878.) Defendants in each case filed counterclaims seeking declaratory judgment of noninfringement, invalidity, and unenforceability of the subject patents. (ECF Nos. 13, 14; Case No. 3:18-cv-414, ECF Nos. 14, 16; Case No. 3:18-cv-415, ECF No. 35.)
> **The Technology**
> Some surgical procedures require a patient to be tilted during surgery. (ECF No. 95 at PageID 1334.) The Trendelenburg position is the common clinical name

---

[1] Unless otherwise noted, all docket numbers refer to Case No. 3:18-cv-413.

for when the patient is tilted so that the patient's feet are elevated. When the patient is tilted in the opposite manner, so that the patient's head is elevated over the patient's feet, the position is called the "Reverse Trendelenburg position." When the patient is tilted on the table, if insufficiently cushioned or otherwise secured, the patient may slide down the table during surgery. This can cause injury. (Id.)

The asserted patents are:

(1) U.S. Patent 8,511,314 (the "'314 patent") entitled "Method of securing a patient onto an operating table when the patient is in the Trendelenburg position and apparatus therefor including a kit," which was filed on February 21, 2013, and issued on August 20, 2013.

(2) U.S. Patent 8,464,720 (the "'720 Patent"), entitled "Method of securing a patient onto an operating table when the patient is in the Trendelenburg position and apparatus therefor including a kit," which was filed on January 9, 2013, and issued on June 18, 2013.

(3) U.S. Patent 9,161,876 (the "'876 Patent"), entitled "Method of securing a patient onto an operating table when the patient is in the Trendelenburg position and apparatus therefor including a kit," which was filed on August 2, 2013, and issued on October 20, 2015.

All three patents contain both method and device claims. All three patents claim priority to the same U.S. Patent App. Serial No. 13/346,852, filed January 10, 2012. (ECF No. 1-3 at PageID 33.) The '314 Patent (ECF No. 1-2) is a continuation of the '720 Patent, and the '876 Patent is a continuation of both the '314 Patent and the '720 Patent. (Case No. 3:18-cv-414, ECF No. 1-2 at PageID 11.) The specifications of the '314, '720, and '876 Patents are identical, but the claim language is not. (See, e.g., ECF No. 94 at PageID 1144.)

Xodus is a company that makes items for use in surgery, including patient positioning systems. (ECF No. 95 at PageID 1334.) Plaintiffs allege that they used their patented inventions to create and market the PINK PAD®, which is a kit that includes a set of foam materials and restraints for preventing a patient from sliding during surgery when the patient is in the Trendelenburg or Reverse-Trendelenburg position. (ECF No. 95 at PageID 1334; Declaration of Dr. Maheswari Senthil ("Senthil Decl."), ECF No. 105-1 at PageID 1972.) Xodus asserts that the PINK PAD® met a long-felt need and had commercial success. (ECF No. 95 at PageID 1335.)

Prime and Symmetry market and sell the following models of Trendelenburg table pads: "STP100, STP100S, STP100S-WING, STP200/S, STP150 S, and STP100 PED Trendelenburg O.R. Table Pads." (ECF No. 95 at PageID 1335.) Plaintiffs accuse these products of infringing their patents. The Defendants' pads are blue, and for the purposes of discussion, the Court refers to the allegedly infringing pads as "the Blue Pads." These pads were produced to the

3

Court during the Claim Construction Hearing and are maintained as Exhibit 4. (ECF No. 123.) Prime is a medical device brand and seller that advertises pads for positioning patients in the Trendelenburg position on its website. G&T manufactures the allegedly infringing pads for Prime, and then sells the blue pads to Prime. (Case No. 3:18-cv-415, ECF No. 38 at PageID 314.) G&T explains that it has an "exclusive manufacturer/distributor relationship" with Prime, and that "G&T manufactures the products accused of infringement in both actions and supplies the accused products exclusively to Prime Medical." (Id.) It does not appear that Xodus and Prime had any commercial relationship prior to this litigation, and currently they are competing in the market for surgical foam pads.

(ECF No. 138 at PageID 2880–83.)

## II.    LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of

4

proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); see also Kalich v. AT & T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

To "show that a fact is, or is not, genuinely disputed," both parties must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." Bruederle, 687 F.3d at 776 (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex Corp., 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)). "'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." Emerson v. Novartis Pharm. Corp., 446 F. App'x 733, 736 (6th Cir. 2011) (alteration in original) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

5

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Anderson, 477 U.S. at 251–52). Summary judgment "'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Emp. Servs., LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Anderson, 106 S. Ct. at 2514; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. Mitchell, 964 F.2d at 584–85.

6

## III.   ANALYSIS AS TO DEFENDANTS' MOTION

### A.  Direct Infringement of Method Claims by Defendants

Defendants seek summary judgment that they do not directly infringe any of the Asserted Method Claims[2] because "Prime Medical does not perform each and every step of the Asserted Method claims."  (ECF No. 237 at PageID 4990.)   Defendants also cite to Plaintiffs' expert testimony to support this contention.  (Id. at PageID 4991.) (citing Expert Report of Dr. Alexander Olawaiye on Infringement, ECF No. 237-4 at PageID 5088.) ("While I understand that Defendants themselves do not use the Accused Products on patients, doctors and/or other operating personnel use the Accused Products for the above-noted purposes. For this reason, I understand that the Asserted Method Claims can be infringed by Defendants only on an indirect basis.")

Plaintiffs do not dispute or address this contention in their Response.  (See generally ECF No. 305.)  As a result, there is no dispute as to the fact that Defendants do not directly infringe the Asserted Method Claims, and Defendants' Motion is **GRANTED** as to Defendants' lack of direct infringement of the Asserted Method Claims.

### B.  Induced Infringement

Defendants also seek summary judgment that they do not induce infringement.  (ECF No. 237 at PageID 4991.)  In support of their Motion, Defendants contend that Plaintiffs have failed to provide evidence of direct infringement by any third-party and that "there is no evidence that Prime Medical intended to induce infringement."  (Id.)  "To prove induced infringement, the patentee 'must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'"  Toshiba Corp. v. Imation

---

[2] The method claims of the patents are Claims 1, 2, 4, 6–8, and 10–11 of the '720 Patent; Claims 23–24 and 26 of the '314 Patent; and Claims 17–18 and 20 of the '876 Patent ("Asserted Method Claims").  (ECF No. 237 at PageID 4987; ECF No. 305 at PageID 9140 n.1.)

Corp., 681 F.3d 1358, 1363 (Fed. Cir. 2012) (quoting i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 851 (Fed. Cir. 2010)).

### i. *Direct Infringement by Third Parties*

"In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd., 501 F.3d 1307, 1313 (Fed. Cir. 2007). "'Direct infringement can be proven by circumstantial evidence.'" Toshiba Corp., 681 F.3d at 1364 (quoting Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1326 (Fed. Cir. 2009)). "Circumstantial evidence must show that at least one person directly infringed an asserted claim during the relevant time period." Id.

Defendants contend that "[a]t best, Xodus relies upon Prime Medical's product literature and Xodus' own expert testing to assert that the Accused Products ***are capable*** of performing the infringing method. . . . That is not enough." (ECF No. 237 at PageID 4993.) (emphasis in original.) Plaintiffs, in response, contend that there is sufficient circumstantial evidence in the record to find that third parties directly infringe:

> Defendants market the Accused Products to be used in the Trendelenburg position. See Doc. 246-4. Defendants' own representative, David Holladay, admitted that the Accused Products are pads for use in the Trendelenburg position. Ex. 1, Holladay Dep. 22:18–23; 61:9–63:21. Defendants discussed using the Accused Products in the Trendelenburg position with their customers. See Doc. 246-13; Doc. 246-15. Defendants provide instructions to customers on how to use the Accused Products in an infringing manner. See Doc. 246-5; Doc. 246-7. The term "STP", part of the name of the Accused Products, even stands for "steep *Trendelenburg* pad." Ex. 1, Holladay Dep. At 37:7–9 (emphasis added). Defendants' internal documents referred to the Accused Products as "Trendelenburg Pads/Kits" that offer "patient stability in Trendelenburg" positions. Ex. 1, Holladay Dep. at Ex. 11. Defendants' internal sales training documents identify the Accused Products as used "for Trendelenburg positioning." Ex. 1, Holladay Dep. at Ex. 10.

8

(ECF No. 305 at PageID 9144.) (emphasis in original.)

In reply, Defendants contend that "the actual instructions for use ('IFU') relied upon in Plaintiffs' Response *never instructs* the medical provider to use the Accused Products in Trendelenburg or any other inclined position." (ECF No. 324 at PageID 9467.) (emphasis in original.) (citing ECF No. 324-1 at PageID 9338.) Defendants contend that because Prime Medical markets for non-infringing uses, "Plaintiffs cannot prove by a preponderance of the evidence that Prime Medical intended for any medical provider to infringe the patents-in-suit." (Id.)

Upon review of Plaintiffs' proffered evidence, the Court finds that there is sufficient circumstantial evidence to make third parties' direct infringement a disputed material fact. (See, e.g. ECF Nos. 305-1, 246-4, 262-4, 246-5, 246-7.) (supporting Plaintiffs' contention that Defendants instructed customers to use the Accused Products in the Trendelenburg position.) As such, Defendants have not met their burden under summary judgment to show that Plaintiffs have produced no evidence of direct infringement. See Toshiba Corp., 681 F.3d at 1365 ("[W]e have concluded that where an alleged infringer designs a product for use in an infringing way and instructs users to use the product in an infringing way, there is sufficient evidence for a jury to find direct infringement.").

### ii.   Defendants' Knowledge

The Parties dispute whether Defendants must have had knowledge prior to Plaintiffs' filing their lawsuit, and as noted by the Parties, the Federal Circuit has not decided whether pre-suit knowledge is required in the context of induced infringement. (ECF No. 305 at PageID 9141; ECF No. 324 at PageID 9468.) (both citing district court decisions only.) Overall, it logically follows that the filing of the suit has put Defendants on notice of the existence of the patents-in-suit since September 18, 2013. (ECF No. 305 at PageID 9141.) Thus, the Court holds that Defendants'

9

Motion for Summary Judgment as to induced infringement is **DENIED** because Plaintiffs have proffered sufficient evidence of both direct infringement and knowledge of the patents-in-suit. See Garrett v. TP-Link Res. Am. Corp., No. 20-cv-03491-SI, 2020 WL 5517202, at *7 (N.D. Cal. Sept. 14, 2020) ("As discussed above with regard to contributory infringement, knowledge of the patent can be established through the filing of the Complaint, but in such instances the claim for induced infringement is limited to post-filing conduct.").

## IV. ANALYSIS AS TO PLANTIFFS' MOTION

### A. Infringement by Defendants

#### i. Direct Infringement

Plaintiffs seek summary judgment on the issue of direct infringement for Claims 1, 2–4, 9–10, 12, 14, and 17–20 of the '314 Patent and Claims 1, 2–4, 6, 8, and 11–14 of the '876 Patent. (ECF No. 246 at PageID 5466, 5469–70.) Defendants contend that there is a material dispute of fact regarding direct infringement. (ECF No. 291 at PageID 8574.) Specifically, Defendants contend that there is a factual dispute as to whether the Accused Products meet the claim requirement of a "foam with properties having a rate of recovery 'sufficiently slow to maintain a depression' or the like." (Id.) Because this claim limitation is in each independent claim of the '314 and '876 Patents, it must be present for the Accused Products to infringe any of these claims that Plaintiffs allege directly infringe. (Id.) Plaintiffs, in reply, contend that Defendants have failed to prove a genuine dispute of fact because (1) "Defendants' reliance on the testimony of Mr. Holladay is improper, as they are attempting to introduce lay testimony to create an issue of material fact when expert testimony is required," and (2) "[t]he Accused Products . . . need only be a viscoelastic foam to infringe this previously construed feature." (ECF No. 307 at PageID 9155.)

10

As a preliminary matter, Defendants, in their Response, have provided evidence in the record to show a dispute of fact as to whether the foam in the accused products has a rate of recovery "sufficiently slow to maintain a depression." (See ECF No. 291 at PageID 8574–79.) (citing to Holladay Dep., ECF No. 291-1; P3T Lab Test, ECF No. 291-6; Dr. Scott's Recovery Time Test, ECF No. 291-7; Mr. Glenn DePhillipo's Recovery Time Test, ECF No. 291-2.) Thus, at issue is whether Plaintiffs' are correct that the Defendants' proffered evidence fails to create a material dispute of fact. (See ECF No. 307 at PageID 9155.)

Plaintiffs first contend that Mr. Holladay's deposition is inadmissible to prove non-infringement and thus cannot be used to show a dispute of material fact. (Id. at PageID 9154–55.) (citing Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1363 (Fed. Cir. 2008) ("[I]t is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless the witness is qualified as an expert in the pertinent art.").) Recognizing that the admissibility of Mr. Holladay's deposition for its proffered purpose has not been fully briefed by the parties, the Court declines to rule in this Order on its admissibility. Further, whether or not the deposition is admissible, as discussed below, the recovery time tests sufficiently raise a dispute of fact as to whether this claim limitation is present in the Accused Products.[3]

Next, Plaintiffs assert that, per this Court's Claim Construction Order, "the only question as to whether the Accused Products meet this limitation is whether they are made of viscoelastic foam." (Id. at PageID 9156.) Plaintiffs, however, interpret too broadly this Court's Claim Construction Order too, which reads:

> In the claim language, the text appears to be merely *characterizing the viscoelastic foam*, or as the Parties described it during the Claim Construction Hearing,

---

[3] Plaintiffs also contest Defendants' use of the P3T Test because "they have provided no one to authenticate its validity." (ECF No. 307 at PageID 9156 n.3.) Much like with Mr. Holladay's Deposition, however, Defendants have proffered sufficient evidence in the experts' recovery time tests that the admissibility of the P3T Test is unnecessary for Defendants to overcome summary judgment on this issue.

"memory foam." (ECF No. 136, Hearing Tr. at PageID 2753 ("I think for the jury standpoint, we might use the analogy of memory foam. It is one of the analogous terms.").) For example, claims 1 and 23 of the '314 Patent call for "deformable material [that] has a rate of recovery sufficiently slow to maintain a depression in said pad for a desired period of time upon a change in a depression-generating force on said pad." See, e.g., '314 Patent at Claims 1, 23. This language characterizes the type of foam—viscoelastic foam having a recovery rate slower than other types of foam, such as the prior art egg crate foam. The Court finds there is sufficient disclosure regarding this term when *reviewing the claim in its full context*. Despite the use of subjective terms, a PHOSITA would be able to discern a memory foam *with "a rate of recovery sufficiently slow to maintain a depression in said pad for a desired period of time."* Accordingly, the Court finds that this term should be afforded its *plain and ordinary meaning*.

(ECF No. 138 at PageID 2903–04.) (brackets in original.) (emphasis added.) Plaintiffs, in their Reply, treat this term as if the Court had construed it to match their alternative proposed construction of "a viscoelastic foam" rather than giving the term its plain and ordinary meaning. (Id. at PageID 2900.) The requirement in this claim limitation is that the viscoelastic foam "has a rate of recovery sufficiently slow to maintain a depression for a desired period of time" rather than just being a viscoelastic foam. Defendants' recovery test exhibits raise a dispute of material fact as to whether this limitation is met. (See, e.g., ECF No. 291-2 at PageID 8672–74; ECF No. 291-7 at PageID 8810.) As a result, Plaintiffs' Motion as to direct infringement is **DENIED**.

### ii. Induced Infringement

Plaintiffs also seek summary judgment on the issue of induced infringement by Defendants of Claims 10 and 11 of the '720 Patent; Claims 23 and 24 of the '314 Patent; and Claims 17 and 18 of the '876 Patent. (ECF No. 246 at PageID 5471, 5476.) Defendants contend that summary judgment on induced infringement is precluded by the following material disputes of fact: (1) whether Plaintiffs have met their burden of proving direct infringement by any party of the method claims; (2) whether the Accused Products meet the limitation of "minimize bottoming out and prevent bottoming out" in independent claim 10 of the '720 Patent; (3) that there are substantial

12

non-infringing uses of the Accused Products; and (4) whether Defendants had the necessary intent. (ECF No. 291 at PageID 8579–84.) In reply, Plaintiffs contend that (1) "Defendants . . . erroneously believe that direct evidence of direct infringement must be shown in order to satisfy a claim for induced infringement"; (2) Defendants' "knowledge of the Patents-in-Suit and thus knowledge of the '720 Claims as well as the intent to have doctors and/or hospitals use the Accused Products in a manner that would infringe" proves Defendants' intent; (3) the issue of substantial non-infringing uses is only relevant to contributory infringement, not induced infringement; and (4) claim 10 requires that the Accused Products "only minimize bottoming out, or to minimize injuries from pressure to infringe this feature," and that the Parties agree "the STP series is designed to minimize injuries that are caused by pressure." (ECF No. 307 at PageID 9160–64.)

As discussed above in the analysis of Defendants' Motion to Dismiss, a reasonable jury could find that there is direct infringement by third parties of the method claims and that Defendants had the required knowledge and intent for induced infringement. At the same time, in taking all reasonable inferences in favor of Defendants, the Court cannot determine that a reasonable jury would, necessarily, find that Defendants had induced infringement. As for substantial non-infringing uses, such evidence can be relevant to intent in inducement: "Especially where a product has substantial noninfringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its products may be infringing the product. Where there are many uses for a product, . . . we are not in the position to infer or not infer intent." Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1365 (Fed. Cir. 2003). That being said, whether Defendants have met their burden of proving substantial noninfringing uses to negate intent is a matter for the fact finder to weigh, not for the Court to decide on summary judgment.

Finally, the Parties dispute whether the phrase "minimizing bottoming out and prevent bottoming out" in independent Claim 10 of the '720 Patent (meaning it is also a requirement for dependent Claim 11) is a claim limitation or if the claim limitation can be fulfilled in the alternative by "minimize injuries from pressure" in the Accused Products. (See ECF No. 291 at PageID 8580; ECF No. 307 at PageID 9163.) The relevant portion of Claim 10 of the '720 Patent recites:

> . . . said viscoelastic foam comprises:
> sufficient thickness and viscosity to sufficiently cushion the body of said patient to *at least one of*: minimize bottoming out and prevent bottoming out, on said medical procedure table, of one or more of the portions of the body of said patient during positioning of said patient and during a medical procedure, and to minimize injuries from pressure during a medical procedure; . . . .

'720 Patent col. 22 ll. 45–54 (emphasis added). Thus, Defendants cannot prove non-infringement of these two claims solely from evidence that the Accused Products "bottom out" because they only need to do "at least one of . . . bottoming out [or] minimize[ing] injuries from pressure." See id. Plaintiffs' Motion is **DENIED**, however, because as discussed above, there remain factual disputes as to Defendants' intent and the direct infringement by third parties of the Asserted Method Claims.

### B. Anticipation

Plaintiffs seek summary judgment as to anticipation because "Defendants[ and Defendants' experts] have failed to provide an element-by-element analysis." (ECF No. 246 at PageID 5477.) In response, Defendants state that they "will not proffer testimony from Dr. Reynolds at trial or otherwise on the issue of invalidity by anticipation." (ECF No. 291 at PageID 8584.) Because Defendants will not proffer an anticipation theory on the basis contested here, Plaintiffs' Motion as to anticipation is **DENIED AS MOOT**.

14

## C. Indefiniteness

Plaintiffs also seek summary judgment as to indefiniteness. Plaintiffs contend that, because Defendants' experts fail to "offer any reasoning as to how or why they reach these conclusions," the claims are definite and, because "both experts gave contradictory answers when asked as to whether they would be opining on indefiniteness," Defendants have failed to show a material dispute of fact as to indefiniteness. (ECF No. 246 at PageID 5480.) Further, Plaintiffs contend that Defendants are precluded from re-arguing that the claims are indefinite because "[t]his Court has already found each of the allegedly ambiguous claim terms to be definite at Claim Construction." (Id. at PageID 5483.) In response, Defendants incorporate their Motion for Summary Judgment Under Section 112 (ECF No. 234) and contend that "Plaintiffs' Motion merely attacks the sufficiency of expert reports and opinions, but does not address why any particular term is definite." (ECF No. 291 at PageID 8586.) In reply, Plaintiffs contend that Defendants "improperly impl[y] a shift of burden to the Plaintiffs. A patent is presumed valid, and any party seeking to invalidate a patent claim has 'the burden of proving indefiniteness by clear and convincing evidence.'" (ECF No. 307 at PageID 9165.) (citing BASF Corp. v. Johnson Matthey Inc., 875 F.3d 1360, 1365 (Fed. Cir. 2017).)

As discussed by the Court in its Order Denying Defendants' Motion for Summary Judgment Under Section 112 (ECF No. 347 at PageID 9856–57), Defendants have not presented any new arguments or evidence on the issue of indefiniteness that was not already considered by the Court during claim construction. As the Court has already found the alleged indefinite terms to be definite in its Claim Construction Order (ECF No. 138), Defendants have no basis for re-arguing indefiniteness at trial. As a result, Plaintiffs' Motion is **GRANTED** as to the claims being definite.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment of Non-Infringement is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**, this 21st day of December, 2021.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE
