# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# NORTHERN DIVISION

| | |
|---|---|
| XODUS MEDICAL, INC., ALESSIO PIGAZZI, and GLENN KEILAR, <br><br>Plaintiffs,<br><br>v.<br><br>PRIME MEDICAL, LLC., and SYMMETRY SURGICAL INC.<br><br>Defendants. | No. 3:18-cv-413-JPM |
| XODUS MEDICAL, INC., ALESSIO PIGAZZI, and GLENN KEILAR, <br><br>Plaintiffs,<br><br>v.<br><br>PRIME MEDICAL, LLC., and SYMMETRY SURGICAL INC.<br><br>Defendants. | No. 3:18-cv-414-JPM |
| XODUS MEDICAL, INC., ALESSIO PIGAZZI, and GLENN KEILAR, <br><br>Plaintiffs,<br><br>v.<br><br>G&T INDUSTRIES, INC.<br><br>Defendant. | No. 3:18-cv-415-JPM |

**ORDER DENYING DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS' USE OF THEIR SALES-FIGURES SPREADSHEET**

Before the Court is Defendants Prime Medical, LLC ("Prime"), Symmetry Surgical Inc., and G&T Industries, Inc.'s Motion to Preclude Plaintiffs' Use of Their Sales-Figures Spreadsheet, filed under seal on November 30, 2021. (ECF No. 320.) Plaintiffs Xodus Medical, Inc. ("Xodus"), Alessio Pigazzi, and Glenn Keilar filed a Response in Opposition on December 17, 2021. (ECF No. 345.) Defendants filed a Reply on January 3, 2022. (ECF No. 372.) For the reasons discussed below, Defendants' Motion is **DENIED**.

## I. BACKGROUND

This is a patent infringement case for technology "related to patient slippage within the [] context of the Trendelenburg position for surgery—when using a viscoelastic foam." (Claim Construction Order, ECF No. 138 at PageID 2894.) The asserted patents are U.S. Patent No. 8,511,314 (the "'314 Patent"), U.S. Patent No. 8,464,720 (the "'720 Patent"), and U.S. Patent No. 9,161,876 (the "'876 Patent"). (Id.) Plaintiffs are seeking lost profits, and part of their evidence for those lost profits is a spreadsheet Bates-stamped XODUS004171 (the "Sales Spreadsheet"), which contains data for each individual sale of Xodus's Pink Pad products. (ECF No. 320 at PageID 9416; ECF No. 345 at PageID 9774.) Plaintiffs' evidentiary support for their lost-profits claim, particularly the Sales Spreadsheet, has been the subject of a number of discovery disputes between the Parties. (See ECF No. 320 at PageID 9415–21; ECF No. 345 at PageID 9774–77.) As part of this ongoing dispute, Magistrate Judge Guyton ordered Plaintiffs to produce "underlying documentation supporting the summary spreadsheet." (ECF No. 176 at PageID 3079.) The Sales Spreadsheet was also discussed at hearings before the Court on August 23, August 27, and October 25, 2021. (ECF Nos. 214, 215, 269.) Defendants seek to exclude the spreadsheet as a sanction for Plaintiffs' alleged failure to comply with Magistrate Judge Guyton's Order, and alternatively,

2

Case 3:18-cv-00413-JPM-HBG   Document 433   Filed 01/27/22   Page 2 of 8   PageID #: 11020

because it is a summary under Federal Rule of Evidence 1006 for which the underlying documentation was not provided. (ECF No. 320 at PageID 9414.)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 37(b)

In the event a party fails to obey a discovery order, the Court may issue the following sanctions:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). The Sixth Circuit considers four factors to determine whether to impose sanctions under Rule 37:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997) (citations omitted).

### B. Federal Rule of Evidence 1006

A party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," but said party "must make the originals or duplicates available for examination or copying, or both, by other

3

parties at a reasonable time and place." Fed. R. Evid. 1006. Printouts of electronically stored information are not considered summaries that fall under Rule 1006. United States v. Nixon, 694 F.3d 623, 634–35 (6th Cir. 2012) ("[T]he simple act of printing out the electronically stored records does not change their status for admissibility.").

## III. ANALYSIS

Defendants assert that Plaintiffs should be precluded from using the Sales Spreadsheet as a sanction for failing to comply with Magistrate Judge Guyton's discovery order, or in the alternative, because it is a summary under Federal Rule of Evidence 1006, and Plaintiffs failed to make the underlying records available to Defendants for examination or copying.[1] (ECF No. 320 at PageID 9414.)

### A. Plaintiffs have complied with Magistrate Judge Guyton's Order.

Defendants contend that Plaintiffs have not complied with the discovery order because:

Although Plaintiffs have produced some supporting documents for the cost and sales figures, the missing data and discrepancies identified by Justin Blok confirm that Plaintiffs have not produced documents or information sufficient for Defendants "to verify (i) that XODUS004171 is an accurate reflection of what is in Xodus'[s] accounting system, or, even more importantly, (ii) whether XODUS004171 is an accurate report or summary of what Xodus actually made on sales of the Pink Pad." Blok Decl. ¶ 18. The documents produced most recently, the sample manual tracing entries, raise as many questions as they answer. For example, those documents show two different prices—an "Original Unit Price" and a "Contract Unit Price"—associated with the same transaction, and it is not clear from any of the documents produced "which of the prices listed on the tracing entries, if either of them, was paid to Xodus, as opposed to being paid to a distributor." Blok Decl. ¶ 12.

---

[1] On reply, Defendants also raise a new argument that the Sales Spreadsheet "has hearsay within hearsay" because it "includes information provided to Xodus from third parties, namely Xodus's distributors." (ECF No. 372 at PageID 10313.) Plaintiffs have not had the opportunity to respond to this contention. The Rule 803(6) Exception to the Rule Against Hearsay would appear to be applicable if the distributors were acting "pursuant to a business duty." This issue can be addressed upon completion of briefing.

4

(ECF No. 320 at PageID 9426–27.)

In response, Plaintiffs contend that they have complied with Magistrate Judge Guyton's order and that Defendants have mischaracterized this discovery dispute. (ECF No. 345 at PageID 9789–90.) In particular, Plaintiffs point out that Magistrate Judge Guyton did not order them to produce the documents, but rather "he ordered Xodus to 'make such documents available for inspection.'" (Id. at PageID 9791.) (citing ECF No. 176 at PageID 3079.) Plaintiffs assert that they have "offered Prime an inspection of the ERP system on numerous occasions, but Prime's counsel never scheduled such an inspection." (Id.) Additionally, Plaintiffs contend that "Xodus provided sample manual sales tracing entries in its attempt to satisfy the Court's directive of October 25, 2021," and that "Prime did not ask Xodus for clarification of the manual sales tracing entries, despite Xodus'[s] standing offer to answer remaining questions." (Id. at PageID 9794.)

In reply, Defendants assert that Plaintiffs' offer to have Defendants inspect the database was insufficient to comply with the order because:

> What Plaintiffs proposed was essentially to let defense counsel see that the "Sales Price" figures on the spreadsheet match the "Sales Price" entries in Xodus's database. What they were ordered to produce, however, was the supporting documentation for those figures and entries, i.e., documentation that would show, not merely that the information was accurately extracted from Xodus's database, but that the information was in fact an accurate report of Xodus's sales revenue. They did not do so, through an offer of inspection or otherwise.

(ECF No. 372 at PageID 10311.)

Throughout this discovery dispute, Plaintiffs have continually and consistently stated:

> Xodus'[s] ERP System is a massive database comprised of 2419 unique data fields that maintain the information Xodus needs to conduct its business in the ordinary course. Xodus uses this data to manage and understand its business with its customers – who uses its products, how many products they purchase, what price they pay, etc. Xodus also uses the data when it is audited for compliance with regulations and certifications. Xodus would also use the data if it needed to issue

> a recall notice for one of its products. It is crucial that the data maintained in the
> ERP System are accurate and reliable. Kaforey Decl., ¶ 3.

(ECF No. 345 at PageID 9774.) (See also Status Conference Transcript, ECF No. 271 at PageID 7470.) ("[A]ll of the records of this company are maintained electronically. And my understanding is there is a single accounting software program that Mr. Wolski explained, and that is the single source where all this information is maintained and where the reports are generated from.") Magistrate Judge Guyton's order stated that "the Court finds that the underlying documentation supporting the summary spreadsheet is relevant to Plaintiffs' claim regarding lost profits," and ordered "Plaintiffs to make such documents available for inspection. The parties shall work together to establish a time and date for the inspection." (ECF No. 176 at PageID 3079.)

Given Plaintiffs' continual statements to the Court that the sole source of regular documentation is this ERP System and given that the Sales Spreadsheet was generated from said ERP System, Plaintiffs' offers to let Defendants' counsel and expert witness inspect the ERP System demonstrate their attempts to comply with this discovery order. The order did not require Plaintiffs to make available documents that support the data in their database, and based on Plaintiffs' representations, such documents do not likely exist for all the sales in question. Thus, the Court will not sanction Plaintiffs because they have made every reasonable effort to comply with this discovery order and cannot be faulted for Defendants' failure to inspect the ERP System. The Court **DENIES** Defendants' Motion as to sanctioning Plaintiffs.

### B. Federal Rule of Evidence 1006 does not apply to the spreadsheet.

Defendants also contend that Plaintiffs have not complied with the requirements of Federal Rule of Evidence 1006 because they have not "produced information that would allow Defendants [to] verify the sales figures in the spreadsheet." (ECF No. 320 at PageID 9430.) Defendants contend that the Sales Spreadsheet is a summary under Rule 1006 because "[t]he spreadsheet lists

figures, and only those figures, for more than seven years' worth of transactions. In ordinary usage, it is a 'summary' of those transactions." (Id.) They contend that it cannot be considered a printout because "Plaintiffs had to choose which sales and cost figures to use." (Id.)

Plaintiffs, in response, contend that the Sales Spreadsheet is not a summary because it "presents a subset of the data in the ERP system consisting of *all* information stored in ten fields of data about two products, 40580 and 40583, for the date range August 1, 2013 to February 1, 2021. . . . It presents the data without manipulation, transformation, addition, limitation, or alteration of any sort." (ECF No. 345 at PageID 9786–87.) (emphasis in original.) Plaintiffs further contend that even if it were considered a summary, Rule 1006 would not apply because "'Rule 1006 does not apply where the summaries *themselves* constitute the business records.'" (Id. at PageID 9787.) (quoting Cosme-Montalvo v. Trafon Grp., Inc., No. 11-2197 (MEL), 2013 U.S. Dist. LEXIS 59076, at *3–4 (D.P.R. Apr. 22, 2013) (emphasis in original).)

In reply, Defendants reiterate that the spreadsheet is a summary rather than a printout because "it is a 'subset' of ten fields from a database that were chosen for purposes of this litigation. The information in the selected fields may not have been altered, but as a selection or subset, the spreadsheet is not the database itself but is a 'manipulation' of it." (ECF No. 372 at PageID 10313.)

In United States v. Nixon, the Sixth Circuit held that Rule 1006 did not apply to a spreadsheet that contained account data generated from a software query for Nixon's account number. 694 F.3d at 633. In determining that the spreadsheet was not a summary for purposes of Rule 1006, the Sixth Circuit found it pertinent that the electronic records "were kept in the regular course of business and maintained in a reliable and secure database" and "that the simple act of printing out the electronically stored records does not change their status for admissibility." Id. at

635. The Sixth Circuit's reasoning does not rely on whether the printout had all the possible fields or a subset of them, contrary to Defendants' assertion in their Reply. (See ECF No. 372 at PageID 10313.) Further, even if the Sales Spreadsheet were a summary for purposes of Rule 1006, as discussed above, Plaintiffs "ma[d]e the originals or duplicates available for examination"; if Defendants had needed to see the database fields that they contend were excluded, they could have done so by inspecting the ERP System. See Fed. R. Evid. 1006. As a result, the Court **DENIES** Defendants' Motion as to the Sales Spreadsheet's admissibility under Rule 1006.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Preclude Plaintiffs' Use of Their Sales-Figure Spreadsheet is **DENIED**.

**IT IS SO ORDERED**, this 27th day of January, 2022.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE