**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION**

| | | |
|---|---|---|
| XODUS MEDICAL, INC.,<br>ALESSIO PIGAZZI, and GLENN KEILAR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-413-JPM |
| | ) | |
| PRIME MEDICAL, LLC., and<br>SYMMETRY SURGICAL INC. | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| XODUS MEDICAL, INC.,<br>ALESSIO PIGAZZI, and GLENN KEILAR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-414-JPM |
| | ) | |
| PRIME MEDICAL, LLC., and<br>SYMMETRY SURGICAL INC. | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| XODUS MEDICAL, INC.,<br>ALESSIO PIGAZZI, and GLENN KEILAR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-415-JPM |
| | ) | |
| G&T INDUSTRIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTIONS IN LIMINE**

Plaintiffs filed seven motions in limine (ECF Nos. 353–56, 358–59, 364), and Defendants filed ten motions in limine (ECF No. 374). The Court addresses all seventeen of these motions in this Order.

| SUMMARY | |
|---|---|
| Plaintiffs' First Motion in Limine | GRANTED |
| Plaintiffs' Second Motion in Limine | GRANTED |
| Plaintiffs' Third Motion in Limine | GRANTED |
| Plaintiffs' Fourth Motion in Limine | GRANTED |
| Plaintiffs' Fifth Motion in Limine | DENIED |
| Plaintiffs' Sixth Motion in Limine | GRANTED |
| Plaintiffs' Seventh Motion in Limine | GRANTED |
| Defendants' First Motion in Limine | DENIED AS MOOT |
| Defendants' Second Motion in Limine | DENIED |
| Defendants' Third Motion in Limine | GRANTED IN PART & DENIED IN PART |
| Defendants' Fourth Motion in Limine | DENIED |
| Defendants' Fifth Motion in Limine | DENIED |
| Defendants' Sixth Motion in Limine | DENIED |
| Defendants' Seventh Motion in Limine | GRANTED |
| Defendants' Eighth Motion in Limine | DENIED AS MOOT |
| Defendants' Ninth Motion in Limine | DENIED AS MOOT |
| Defendants' Tenth Motion in Limine | DENIED AS MOOT |

## I. PLAINTIFFS' FIRST MOTION IN LIMINE

Before the Court is Plaintiffs' First Motion in Limine Regarding Anticipation, filed on December 29, 2021. (ECF No. 353.) Defendants filed a Response in Opposition on January 7, 2022. (ECF No. 393.) Plaintiffs filed a Reply on January 12, 2022. (ECF No. 411.)

Plaintiffs request that the Court "not allow testimony, evidence, or argument that the Asserted Claims are invalid as anticipated by a single prior art reference under 35 U.S.C. § 102." (ECF No. 353 at PageID 9941.) Plaintiffs state that Defendants' expert Dr. Scott cannot offer an opinion as to anticipation because he "has not undertaken an element-by-element analysis of any prior art reference, and he testified that he does not have an opinion regarding anticipation." (Id. at PageID 9942.) Additionally, Plaintiffs point out that the Court denied as moot Plaintiffs' Motion for Summary Judgment as to anticipation because Defendants stated that they would not rely on expert testimony from Dr. Reynolds as to anticipation and did not indicate at that time that Dr. Scott would be providing an opinion as to anticipation. (Id. at PageID 9943.)

In response, Defendants contend that Plaintiffs' Motion is overly broad because it seeks to preclude any evidence as to invalidity under section 102. (ECF No. 393 at PageID 10513–14.) Further, Defendants state that "Defendants' experts will not affirmatively state that the Asserted Claims are invalid as anticipated by a single prior art reference, but that should not preclude all evidence from all sources on the issue at trial." (Id. at PageID 10514.)

In reply, Plaintiffs contend that "[g]iven the Court's ruling that the issue of anticipation is moot based on Defendants' representation, Defendants should not be allowed to elicit testimony about their new anticipation theories from *any* witness." (ECF No. 411 at PageID 10929.) The Court agrees. Defendants have no reason to offer testimony as to anticipation at trial if they do not plan to offer an affirmative invalidity theory based on anticipation. Further, the Court already

3

found the issue of anticipation to be moot on summary judgment due to Defendants' own representations to the Court. (See ECF No. 348 at PageID 9879.) Plaintiffs' First Motion in Limine is **GRANTED**.

## II.    PLAINTIFFS SECOND MOTION IN LIMINE

Also before the Court is Plaintiffs' Second Motion in Limine Regarding Indefiniteness, filed on December 29, 2021. (ECF No. 354.) Defendants filed a Response in Opposition on January 7, 2022. (ECF No. 392.) Plaintiffs filed a Reply on January 12, 2022. (ECF No. 412.)

Plaintiffs request that the Court prohibit "testimony, evidence, or argument that the asserted claims are indefinite, unclear, ambiguous, confusing, vague, or otherwise not understood by a person having ordinary skill in the art ('PHOSITA') under 35 U.S.C. § 112." (ECF No. 354 at PageID 9953.) In support, Plaintiffs point out that the Court has already found the terms not indefinite, both in its Claim Construction Order, and when it granted summary judgment for Plaintiffs that the claims were not indefinite. (Id. at PageID 9954.)

In response, Defendants contend that what Plaintiffs seek to exclude in their Motion is overly broad because whether or not a claim is indefinite under the legal standard does not relate to the term being "unclear, ambiguous, confusing, or vague." (ECF No. 392 at PageID 10509.) (internal quotations omitted.) Defendants contend that they should be allowed to present evidence of their subjective belief that the claims were vague or confusing because that is relevant to each Defendant's state of mind for willful infringement and induced infringement. (Id. at PageID 10510.)

In reply, Plaintiffs contend:

This is not a case where the three Defendants would have made subjective determinations of invalidity or non-infringement without the benefit of a patent counsel and a PHOSITA. To allow Defendants to proffer testimony that after the filing of suit, despite the aid of patent counsel and experts in the technology, they

4

did not understand the scope of the claims would directly conflict with this Court's
determination that the scope of the claims would be understood by a PHOSITA and
that the claims are not indefinite.

(ECF No. 412 at PageID 10933.)

Defendants' contention that a subjective belief in the invalidity of the patent is relevant to state of mind for induced and willful infringement contradicts precedent on this issue. "When infringement is the issue, the validity of the patent is not the question to be confronted." Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 643 (2015). "[I]f belief in invalidity were a defense to induced infringement, the force of that presumption [of validity] would be lessened to a drastic degree, for a defendant could prevail if he proved he reasonably believed the patent was invalid." Id. at 643–44. As a result, to allow Defendants to put on such a defense would be legal error. Plaintiffs' Second Motion in Limine Regarding Indefiniteness is **GRANTED**.

## III.    PLAINTIFFS' THIRD MOTION IN LIMINE

Also before the Court is Plaintiffs' Third Motion in Limine Regarding Unasserted Patents and Assertions of Independent Development of the Accused Products, filed on December 29, 2021. (ECF No. 355.) Defendants filed a Response in Opposition under seal on January 11, 2022. (ECF No. 406.) Plaintiffs filed a Reply on January 12, 2022. (ECF No. 413.)

Plaintiffs request that the Court not allow Defendants "to introduce evidence or testimony at trial concerning or referring to Prime's U.S. Patent Nos. 9,949,882 ('882 Patent') and 10,688,004 ('004 Patent') or any other unasserted patent or patent application belonging to Defendants." (ECF No. 355 at PageID 9982.) Plaintiffs assert that such evidence is not relevant and would likely mislead the jury that "Prime's patents in some way insulate Defendants from liability." (Id. at PageID 9983–84.) Similarly, Plaintiffs contend that Defendants' assertions of independent development are irrelevant and risk misleading the jury. (Id. at PageID 9985.)

5

In response, Defendants contend that evidence of their own patents is relevant to rebut Plaintiffs' allegations "that Defendants have known about Plaintiffs' patents and have continued to infringe them." (ECF No. 406 at PageID 10777.) As for independent development, Defendants contend that the story of their development of the STP pads is necessary context for Mr. Blok's reasonable royalty analysis, which considers the agreement between Mr. Grindstaff (an inventor who received a 10 percent commission of the gross profit margin of certain STP pads for his contributions) and Prime to apportion his proposed royalty rate. (Id. at PageID 10779.) Defendants also assert that their sales of the STP pads "[are] independently relevant at least because Defendants' sales of the STP pads occurred before the priority date of the '720 Patent and more than one year before the effective filing date of the '314 and '876 Patents. (Id. at PageID 10780.)

In their Reply, Plaintiffs reiterate that "in the present case Prime's patents are not relevant to Plaintiffs' invalidity or noninfringement positions." (ECF No. 413.) Regarding independent development, Plaintiffs contend that "[b]oth sides' damages experts address Prime's royalty payments to Mr. Grindstaff," and "[b]oth experts can analyze Prime's royalty payments to Mr. Grindstaff without addressing the development history of the accused products." (ECF No. 413.)

Prime has failed to make a case that Prime's unasserted patents are relevant to the issues here. The existence of Prime's own patents does not affect Prime's knowledge of the asserted patents or the alleged infringement. Thus, their introduction could only mislead the jury. While the independent development may have some relevance to Defendants' damages testimony, it does not appear necessary for that analysis. Overall, the independent development testimony is substantially more likely to mislead the jury that it is a defense to liability and should be excluded under Federal Rule of Evidence 403. Plaintiffs' Third Motion in Limine is **GRANTED**.

6

## IV.    PLAINTIFFS' FOURTH MOTION IN LIMINE

Before the Court is Plaintiffs' Fourth Motion in Limine Regarding Lay Witness Testimony About Claim Limitations, filed on December 29, 2021.  (ECF No. 356.)  Defendants filed a Response in Opposition on January 7, 2022.  (ECF No. 394.)  Plaintiffs filed a Reply on January 12, 2022.  (ECF No. 419.)

Plaintiffs request that "[t]he Court preclude Defendants from eliciting testimony from lay witnesses that a recited claim limitation is not present in the Accused Products or that a recited claim limitation is present in any Prior Art reference" and "preclude Defendants from offering related evidence or making arguments about the same."  (ECF No. 356 at PageID 9989.)  Plaintiffs contend that "[a]ny attempt by Defendants to have lay witness(es) conduct direct comparisons of claim limitations to the Accused Products and/or Prior Art would be improper under Rule 701 and Sundance.  (Id. at PageID 9990–91.) (citing Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1363 (Fed. Cir. 2008).)

In response, Defendants contend that they "intend to call the designers and manufacturers of the Accused Products and some of the prior art products who will testify regarding how the products are designed, manufactured, and what properties and characteristics the products have," which they contend "is proper lay testimony and will assist the jury in understanding Defendants' defenses."  (ECF No. 394 at PageID 10517.)  Further, with respect to willful and induced infringement, Defendants contend that Mr. Holladay's testimony about how he "developed his products and whether he believed that the products do not meet a particular element of the asserted claims or that those claims are invalid is directly relevant to the jury's consideration of whether Defendants intended to induce infringement or willfully infringed."  (Id. at PageID 10518.)  Defendants also contend that "the Federal Circuit has held it is an abuse of discretion to preclude

a witness from testifying regarding his personal knowledge of prior art, where there is no risk of admitting expert opinion testimony on invalidity" and that "Defendants do not intend to present[] any opinion testimony from a lay witness as to the ultimate issue of whether the patents-in-suit are invalid." (Id. at PageID 10519.) (citing Meyer Intellectual Props. Ltd. v. Bodum, Inc., 690 F.3d 1354, 1376–78 (Fed. Cir. 2012).)

In reply, Plaintiffs contend that Defendants "blur the line between what is acceptable lay witness testimony and what is acceptable expert testimony as well as the respective roles of lay witnesses and experts." (ECF No. 419 at PageID 10966.) Plaintiffs also assert that Meyer Intellectual Properties does not support Defendants' contentions:

> Rather, the court there admitted lay witness testimony regarding "*factual matters* within [the witness's] personal knowledge where those facts are supported by corroborating documentation." [Meyer, 690 F.3d] at 1377. Meyer did not admit testimony regarding "personal knowledge *of prior art*," (ECF No. 394, at 4), or allow the witness to testify regarding prior art and claim limitations, as Defendants would like to have it. Rather, Meyer admitted testimony of "factual matters" of personal knowledge of a product, where drawings and a catalog were used to corroborate the testimony of the witness. Id. at 1377. The drawings were not admitted "as independent prior art," and the witness did not testify with regard to the substance of the prior art as it related to the asserted claims. Id.
>
> The distinction shown in Meyer is that lay witnesses may testify to "factual matters," but they may not offer opinions about the prior art – or, as Defendants describe it, "testify regarding the prior art and what qualities or traits it has, even if those qualities or traits touch on aspects of the asserted claims." [ECF No. 394, at 4.]
>
> The acceptable testimony in Meyer included the following colloquy: "Was this [product] on sale? Yes. Is it—was it sold in 1982? Yes." Id. The Federal Circuit did not approve of testimony "regarding the prior art" or regarding "personal knowledge of prior art."

(ECF No. 419 at PageID 10969–70.) (second brackets and emphasis in original.) Plaintiffs also contend that Defendants' intent to rebut the induced and willful infringement claims does not make

the lay testimony admissible because "'invalidity *will not negate* the scienter required' for induced and willful infringement." (Id. at PageID 10971.) (citing Commil USA, 575 U.S. at 646.)

"'[A] witness not qualified in the pertinent art [may not] testify as an expert on obviousness, or any of the underlying technical questions, such as the nature of the claimed invention, the scope and content of the prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention.'" HVLPO2, LLC v. Oxygen Frog, LLC, 949 F.3d 685, 689 (Fed. Cir. 2020) (quoting Sundance, 550 F.3d at 1364) (brackets in original). The law is clear that a lay witness may not offer testimony on these issues. Further, Plaintiffs are correct that Meyer Intellectual Properties does not allow for such testimony; if Defendants wish to question a lay witness as to facts such as when a particular product was on sale, such testimony would not be precluded by this Order so long as that witness had the appropriate personal knowledge. See 690 F.3d at 1377 ("[A]s counsel for Bodum explained to the district court: 'we are not asking them to give an opinion. Mr. Bodum is going to testify about facts. Was this [3–Cup French Press] on sale? Yes. Is it—was it sold in 1982? Yes.'") (brackets in original). Further, as discussed above, a Defendant's subjective belief as to invalidity is irrelevant to induced infringement and willful infringement. Plaintiffs' Fourth Motion in Limine is **GRANTED**.

## V.     PLAINTIFFS' FIFTH MOTION IN LIMINE

Before the Court is Plaintiffs' Fifth Motion in Limine Regarding the Venus Foam and the Future Foam Tested by Defendants' Experts, filed on December 29, 2021. (ECF No. 358.) Defendants filed a Response in Opposition on January 7, 2022. (ECF No. 399.) Plaintiffs filed a Reply on January 12, 2022. (ECF No. 415.)

9

Plaintiffs assert that "[t]he Court should not allow any testimony, evidence, or argument that the Venus foam and the Future foam tested by Defendants' experts are prior art." (ECF No. 358 at PageID 9996.) Plaintiffs contend that "[t]here is no evidence that the specific Foams tested by Defendants' experts were sold or available for sale before the priority date of the Patents-in-Suit (i.e., January 10, 2012); therefore, they do not qualify as prior art." (Id. at PageID 9997.)

Defendants oppose this Motion as overly broad. (ECF No. 399 at PageID 10668.) Defendants contend that "[t]he Venus Foam pad tested by Defendants' experts is made of foam that was indisputably sold years prior to Plaintiffs' alleged effective date of January 10, 2012." (Id. at PageID 10669.) In support, they point to deposition testimony from "Mr. Dobratz, the corporate witness for the supplier of Venus Foam, FXI, Inc.," who stated that "the Venus Foam sold in 2008 is the same as the Venus Foam pad provided by FXI, Inc. in this case and tested by Defendants' expert." (Id. at PageID 10669–70.) Similarly, Defendants contend that "Future Foam was indisputably sold prior to Plaintiffs' alleged effective date." (Id. at PageID 10670.) In support, Defendants assert that Mr. Heller, the corporate representative for Future Foam, Inc., "confirmed that the sample provided in this case (and tested by Defendants' experts) is not materially different in any relevant aspect" from the foam sold before 2011 that is no longer available. (Id. at PageID 10671.)

In reply, Plaintiffs contend that "Defendants acknowledge that these Foams were not prior art . . . but still want to call these Foams prior art." (ECF No. 415 at PageID 10949.) Plaintiffs contend that "Defendants' intended use of the Foams can confuse a jury into thinking that the Foams, which are cut to bedding dimensions, were known to and/or were configured to be used as a Trendelenburg positioner before 2012, when they were not." (Id. at PageID 10950.) For this

10

reason, Plaintiffs contend that Defendants "should be prohibited from saying that those specifically tested Foams existed before 2012 (i.e. that they were prior art) because they did not." (Id.)

Defendants have provided sufficient evidence that the tested foams are the same as the foams available before the priority date, even if they were not actually manufactured before then. (See ECF No. 399-2 at PageID 10678–79; ECF No. 399-6 at PageID 10723–28.) Further, Plaintiffs' concerns that Defendants will use these Foams for an argument on anticipation is moot because the Court granted Plaintiffs' First Motion in Limine as to Anticipation above. As a result, the Court **DENIES** Plaintiffs' Fifth Motion in Limine.

## VI. PLAINTIFFS' SIXTH MOTION IN LIMINE

Also before the Court is Plaintiffs' Sixth Motion in Limine Regarding 35 U.S.C. § 102(b) Commercial Offer for Sale, filed on December 29, 2021. (ECF No. 359.) Defendants filed a Response in Opposition under seal on January 11, 2022. (ECF No. 407.) Plaintiffs filed a Reply on January 12, 2022. (ECF No. 416.)

Plaintiffs assert that "[t]he Court should not allow any argument or opinion testimony that the purchase of Venus foam from the E.N. Murray Company was an invalidating commercial sale/offer for sale under 35 U.S.C. § 102(b)." (ECF No. 359 at PageID 10011.) Plaintiffs contend that "Defendants apparently plan to argue that E.N. Murray's sale of component pads to the inventors constituted an invalidating commercial sale," which Plaintiffs allege "would have the preposterous consequence that no inventor could purchase prototypes or product components without barring themselves from obtaining a patent." (Id. at PageID 10012.) In support, Plaintiffs contend that "Medicines I teaches that 'the fact that a transaction is between a supplier and inventor is an important indicator that the transaction is not a commercial sale.'" (Id. at PageID 10013.) (quoting Meds. Co. v. Hospira, Inc., 827 F.3d 1363, 1380 (Fed. Cir. 2016).) Further, Plaintiffs

contend that "Defendants have not proffered any evidence that the prior art foams, including the Venus foam purchased from E.N. Murray, met each and every limitation of the Asserted Claims prior to the critical date." (Id.)

In response, Defendants state that they do not oppose the Motion to the "extent it seeks only to preclude 'argument or opinion testimony that the purchase of Venus foam from the E.N. Murray Company was an invalidating commercial sale/offer for sale under 35 U.S.C. § 102(b).'" (ECF No. 407 at PageID 10868.) Defendants, however, state that "to the extent Plaintiffs' Sixth MIL could encompass the underlying evidence of those Venus Foam sales to Dr. Pigazzi and Mr. Keilar or the elicitation of testimony concerning those sales, Plaintiffs' Sixth MIL should be denied, as that evidence is relevant for other purposes." (Id.) Defendants contend that "[w]hat foam Dr. Pigazzi purchased, why he purchased it, the characteristics of the foam he purchased, and what he did with these foams during the multiple years he had them are all relevant topics for cross-examination," and that "the Venus Foam sold is directly relevant to the invalidity defense of obviousness raised under 35 U.S.C. § 103." (Id. at PageID 10869.)

In reply, Plaintiffs assert that given Defendants' Response in Opposition, the Motion should be granted. (ECF No. 416 at PageID 10953.) Plaintiffs state that they "do not disagree that evidence of Dr. Pigazzi and Mr. Keilar's purchase of prototypes is admissible," but raise concerns that Defendants plan to use such testimony as evidence for an anticipation argument. (Id. at PageID 10954.)

As already discussed above, Defendants are precluded from offering testimony, evidence, or argument as to anticipation because the Court has granted Plaintiffs' First Motion in Limine as to Anticipation. Outside of that issue, the Parties appear to be in agreement that Plaintiffs' Sixth Motion in Limine should be granted. The Court **GRANTS** this Motion.

## VII.    PLAINTIFFS' SEVENTH MOTION IN LIMINE

Before the Court is Plaintiffs' Seventh Motion in Limine Regarding Defendants' 2018 P3T Test, filed on December 29, 2021.  (ECF No. 364.)  Defendants filed a Response in Opposition on January 7, 2022.  (ECF No. 400.)  Plaintiffs filed a Reply on January 12, 2022.  (ECF No. 417.)

Plaintiffs assert that "[t]he Court should not allow evidence, testimony, or argument relating to the testing of the Accused Products undertaken by P3T Testing on behalf of Defendant Prime Medical LLC ('Prime') on July 25, 2018 ('P3T Test')."  (ECF No. 364 at PageID 10045.) In support, Plaintiffs contend that "Defendants' experts have not relied on the information in the P3T test in any of their reports or during deposition, nor have they even opined on whether the Accused Products meet the 'sufficiently slow' rate of recovery limitation."  (Id. at PageID 10046.) Additionally, Plaintiffs assert that "Defendants also lack any witnesses who could authenticate the P3T Test as a business record or otherwise . . . or who could testify as to the meaning of its results, which are hearsay.  The P3T Test is, in effect, undisclosed expert testimony."  (Id.)  Plaintiffs also assert that the test is excludable under Federal Rule of Evidence 403 for confusing the issues and misleading the jury because "the 'indeterminate' result merely means that . . . specific test was inconclusive in that particular moment of time."  (Id. at PageID 10047.)

In response, Defendants assert that the P3T Test is admissible as "circumstantial evidence that validates Defendants' reasonable belief and state of mind that the Accused Products do not infringe the asserted patents," which is relevant to willful infringement and induced infringement. (ECF No. 400 at PageID 10742.)  Defendants contend that "Plaintiffs are right that no expert opines that Defendants do not infringe based on the 2018 P3T Test, but that is not the relevance of the test.  The test goes directly to Defendants' intent to induce or willfully infringe the patents-in-suit." (Id. at PageID 10743.)

13

On Reply, Plaintiffs contend that "[t]he P3T Test fails to speak to Defendants' state of mind as they contend, and despite any value it may have for Defendants, the P3T Test is more likely to cause harm and unfairly prejudice Plaintiffs by confusing or misleading the jury." (ECF No. 417 at PageID 10957.) (citing Fed. R. Evid. 403.) Plaintiffs contend that "[r]egardless of Defendants' reasoning for admitting the P3T Test, this implication would very likely mislead the jury to think the Accused Products lack any sort of recovery rate, when all other evidence suggests that this is not true." (Id. at PageID 10959.)

The Court agrees that even if the P3T Test is otherwise admissible for a non-hearsay use such as proving a Defendant's state of mind, the likelihood that it would mislead or confuse the jury into using it to determine whether Defendants infringe is far too high. Plaintiffs' Seventh Motion in Limine is **GRANTED**.

## VIII.  DEFENDANTS' FIRST MOTION IN LIMINE

Before the Court is Defendants' First Motion in Limine, filed under seal on January 3, 2022. (ECF No. 374 at PageID 10339–40.) Plaintiffs filed a Response in Opposition on January 7, 2022. (ECF No. 378.) Defendants filed a Reply on January 12, 2022. (ECF No. 414 at PageID 10941.)

Defendants contend that "[t]he Court should preclude any evidence or argument that Defendants copied Plaintiffs' product or process because Plaintiffs did not plead this allegation or produce any documents or other evidence to support any 'copying' in this case." (ECF No. 374 at PageID 10339.) In support, Defendants contend that "'copying' is not relevant to infringement because it is not a comparison of the defendants' conduct to the claim language." (Id.) Further, Defendants state that "Plaintiffs improperly intend to rely on pure speculation and conjecture to

14

support a 'copying' argument without actual proof," which "would invite jury confusion as to the issue of infringement." (Id. at PageID 10340.)

In response, Plaintiffs contend that the Court should deny the Motion "because it is based on the false premise that Plaintiffs intend to make improper comparisons of the accused and patented products and to offer evidence, testimony, or argument that Defendants copied Plaintiffs' patented products." (ECF No. 378 at PageID 10411.) Plaintiffs contend that copying would be relevant to induced infringement and nonobviousness, but they state that they "do[] not intend to use copying evidence unless Defendants open the door by presenting evidence or argument about their unasserted patents or their alleged independent development of the accused products." (Id. at PageID 10412–13.) They further state that "[g]ranting Plaintiffs' Third Motion in Limine would resolve Defendants' concern about the use of evidence of copying." (Id. at PageID 10413.)

On Reply, Defendants state that "Plaintiffs concede they 'have no intention of comparing their patented products to Defendants' accused products to prove infringement,'" and that, "[f]or this reason alone, Defendants['] First MIL should be granted." (ECF No. 414 at PageID 10941.)

The Court has granted Plaintiffs' Third Motion in Limine above, the potential denial of which was Plaintiffs' sole basis for opposing this Motion in Limine. As the reason for the underlying dispute has already been resolved earlier in this Order, Defendants' First Motion in Limine is **DENIED AS MOOT**.

## IX.   DEFENDANTS' SECOND MOTION IN LIMINE

Also before the Court is Defendants' Second Motion in Limine, filed under seal on January 3, 2022. (ECF No. 374 at PageID 10340–41.) Plaintiffs filed a Response in Opposition on January 7, 2022. (ECF No. 384.) Defendants filed a Reply on January 12, 2022. (ECF No. 414 at PageID 10941–42.)

15

"Defendants move to exclude any evidence or reference to the reexamination proceedings because the relevance, if any, is 'marginal' and 'the probative value is greatly outweighed by the expenditure of time that would be required to give the jury the full context necessary to fairly evaluate the evidence,'" and additionally, "because 'there would also be a significant risk of confusion of the issues.'" (ECF No. 374 at PageID 10340.) (quoting Interdigital Commc'ns Inc. v. Nokia Corp., No. CV 13-10-RGA, 2014 WL 8104167, at *1 (D. Del. Sept. 19, 2014).) Defendants contend that "[a]dmitting evidence, testimony, and argument about the reexaminations is likely to mislead the jury into believing that because the patents-in-suit were not invalidated earlier, the jury should not consider invalidating them now." (Id. at PageID 10341.) Defendants also assert that "it would require the Court to explain the process of *ex parte* reexamination proceedings, the difference in legal standards, the evidence the Patent Office considered, and the outcome—this is a waste of time that would confuse the jury as to the standards and evidence applicable in this case." (Id.)

In response, Plaintiffs contend that this Motion should be denied for the following reasons:

(1) the reexamination proceedings at issue have been completed and are final, (2) the prior art references considered by the PTO in these reexamination proceedings are the same references that Defendants will be presenting at trial in their attempt to invalidate the Patents-in-Suit, and (3) Defendants' knowledge of the result but continued assertion of invalidity theories that were twice unpersuasive to the PTO shows Defendants['] willful infringement of the Patents-in-Suit. The reexamination proceedings are part of the respective prosecution histories and the prior art considered is no different than that considered during initial prosecution and printed on the face of the respective patents.

(ECF No. 384 at PageID 10439–40.) Plaintiffs contend that "Xodus should be permitted to rebut attacks from previously considered prior art references using the ex-parte reexamination file histories." (Id. at PageID 10443.)

16

In reply, Defendants contend that "[s]everal prior art references, including the Venus Foam and Future Foam pads, were not considered during any reexamination of the Asserted Patents, nor disclosed during patent prosecution." (ECF No. 414 at PageID 10941.) Defendants further assert that "Plaintiffs' Response also fails to address the lengthy detour required to provide the jury with the requisite background into the different legal standards applied by the PTO and explanation of the limited scope and non-adversarial nature of *ex parte* reexaminations." (Id. at PageID 10942.)

The reexamination proceedings here are indeed final, making them far more relevant than if they were currently still in process. See Oracle Am., Inc. v. Google, Inc., No. C 10–03561 WHA, 2012 WL 1189898, at *3 (N.D. Cal. Jan. 4, 2012) ("To be sure, the initiation of reexamination and the customary first office action prove little; but here, the examiners have gone to the end of their process. It would be wrong to conceal this important information from the jury."). Further, while Defendants do have prior art evidence that was not before the PTO, they have not stated that they will not repeat any arguments based on combinations of prior art that were already considered in the re-examinations. At this time, there could be a proper basis for Plaintiffs to introduce such evidence, even if it would take time to explain the process to the jury. As a result, Defendants' Second Motion in Limine is **DENIED**.

## X.    DEFENDANTS' THIRD MOTION IN LIMINE

Also before the Court is Defendants' Third Motion in Limine, filed under seal on January 3, 2022. (ECF No. 374 at PageID 10342–43.) Plaintiffs filed a Response in Opposition on January 7, 2022. (ECF No. 379.) Defendants filed a Reply on January 12, 2022. (ECF No. 414 at PageID 10942–43.)

Defendants contend that "[t]he Court should preclude the parties from referring to the existence, conclusions, rulings, settlements, verdicts or judgments of other lawsuits or other

17

proceedings." (ECF No. 374 at PageID 10342.) Defendants state that "Xodus confirmed that Mr. Hofmann [Xodus's damages expert] would not use the settlement agreements from these other lawsuits as a basis for his reasonable royalty opinion." (Id.) Defendants state that "[i]nstead, Xodus intends to introduce these other lawsuits and settlement agreements through its CEO" but that "[d]iscussing them would do nothing but imply that because other surgical pad manufacture[r]s settled with Xodus then Defendants should have as well." (Id.) Defendants contend that "[t]hese other lawsuits and settlement agreements have no purpose other than to prejudice the jury against Defendants, confuse the issues, waste time, and mislead the jury. Evidence of this nature should be excluded under Fed. R. Evid. 403." (Id. at PageID 10343.)

In response, Plaintiffs contend that "[t]he fact that Plaintiffs filed three lawsuits to enforce the same patent rights at issue in this action demonstrates their history of enforcing their patent rights" and that "[l]ikewise, the fact that Plaintiffs settled two of them without granting a license but on terms that required the removal of the accused products from the market demonstrates their policy against licensing its patented technology." (ECF No. 379 at PageID 10416–17.) Plaintiffs assert that "[t]hese facts are directly and indisputably relevant to the reasonable royalty analysis under the Georgia-Pacific factors" and that "[t]he admission of these facts would not unfairly prejudice Defendants, because Plaintiffs will not use them to insinuate Defendants' liability or to suggest an appropriate quantum of damages." (Id. at PageID 10417.) Further, Plaintiffs contend that "Defendants are only partially correct about Mr. Hofmann's intended reliance on the three lawsuits," because "he should be allowed to discuss them as part of his analysis of the fourth Georgia-Pacific factor, which concerns the licensor's established licensing policy." (Id. at PageID 10418.)

On Reply, Defendants contend that "Plaintiffs' concession . . . is too narrow." (ECF No. 414 at PageID 10942.) Defendants further assert that "during the parties' meet and confer process, Plaintiffs informed Defendants of their intended use of these other lawsuits and settlement agreements through their CEO, Craig Kaforey," and that "such testimony . . . goes far beyond the alleged use by Plaintiffs' damages expert with respect to his reasonable royalty analysis, which forms the basis of Plaintiffs' Response, and would unfairly prejudice Defendants." (Id.)

Plaintiffs' use of the past settlement agreements is permissible in their expert's Georgia-Pacific reasonable royalty analysis. Craig Kaforey's testimony, however, is less clearly relevant for any permissible purpose, and substantial prejudice would likely far outweigh any potential relevance. See Fed. R. Evid. 403. Thus, Defendants' Motion is **DENIED** as to Mr. Hofmann's use of the past settlement agreements and **GRANTED** as to Craig Kaforey's testimony regarding past litigation and settlements.

## XI.   DEFENDANTS' FOURTH MOTION IN LIMINE

Also before the Court is Defendants' Fourth Motion in Limine, filed under seal on January 3, 2022. (ECF No. 374 at PageID 10344–49.) Plaintiffs filed a Response in Opposition on January 7, 2022. (ECF No. 385.) Defendants filed a Reply on January 12, 2022. (ECF No. 414 at PageID 10943–45.)

Defendants contend that "[t]he Court should preclude any effort by Plaintiffs to present any evidence, argument or reference, or elicit testimony . . . that the '720 Patent is entitled to a priority date prior to January 9, 2013, and that the '314 and '876 Patents are entitled to a priority date prior to February 21, 2013." (ECF No. 374 at PageID 10344.) In support, Defendants assert that while "[t]he '720 Patent is a continuation-in-part of its parent non-provisional application 13/346,852, filed on January 10, 2012[,] . . . the claims in the '720 Patent are entirely unsupported

19

by its parent application." (Id. at PageID 10346.) "As such, the effective priority date of the '720 Patent is January 9, 2013, the date the application that became the '720 Patent was filed." (Id. at PageID 10347.) Defendants then state that "[t]he '314 and '876 Patents are intended to be continuations of the '720 Patent and also claim priority to provisional application 61/654,339, which was filed on June 1, 2012." (Id.) Defendants contend, however, that "none of the claims in the '314 or '876 Patents are supported by the disclosures of the 61/654,339 provisional application." (Id.) Particularly, Defendants contend that neither the 61/654,339 provision application nor the 13/346,852 parent application provides support for the following term: "deformable material has a rate of recovery sufficiently slow to maintain a depression in said pad [arrangement] for a desired period of time upon a change in a depression-generating force on said pad [arrangement]." (Id. at PageID 10347–48.) (brackets in original.) (further formatting omitted.) Defendants contend that "[b]ecause Plaintiffs' experts did not provide opinion or analysis supporting their claim of an earlier priority date of the '720 Patent, their conclusory statements amount to bare legal conclusions that the Court should exclude." (Id. at PageID 10348.) Similarly, Defendants make the same assertion about the priority date of the '314 and '876 Patents. (Id. at PageID 10349.)

In response, Plaintiffs contend that "[t]his is the first time Defendants have meaningfully challenged the priority dates of the Asserted Patents" and that "[t]hrough their motion, and in circumvention of their disclosure obligations, they introduce evidence and arguments that have never been presented in this case." (ECF No. 385 at PageID 10445–46.) As a result, Plaintiffs contend that Defendants' argument in this Motion should be excluded, as it failed "to meet the disclosure requirements of Rule 26." (Id. at PageID 10446.) Further, Plaintiffs contend that "[t]o the extent the Court permits Defendants to offer evidence and argument in support of the legal

theories detailed for the first time in MIL No. 4, Plaintiffs should be allowed to rebut these theories by demonstrating that the Asserted Claims are supported by the '852 Application." (Id. at PageID 10450.)

In reply, Defendants contend that "Plaintiffs admit that Defendants put the priority date of the Asserted Patents at issue when Defendants challenged the priority date in their First Set of Supplemental Contentions Regarding Invalidity and Unenforceability of the Patents-in-Suit." (ECF No. 414 at PageID 10943.) Defendants contend that "Plaintiffs erroneously focus on Defendants' supposed lack of expert disclosure regarding the priority date issue" and that "no expert testimony regarding the priority date is required where Plaintiffs admit the Pink Pads embody the Asserted Patents and the evidence establishes that the Pink Pad products were marketed and sold prior to the filing dates of the Asserted Patents." (Id. at PageID 10944.)

The Court finds that Defendants' argument is an untimely disclosure under Federal Rule of Civil Procedure 26. Beyond a quick mention in Defendants' Supplemental Invalidity Contentions, this theory for the priority date and invalidity based on sales of the Pink Pad had not been fully disclosed until the filing of this Motion. Indeed, one would expect that such an argument would have been made, at the very least, in Defendants' Motion for Summary Judgment Under the On-Sale Bar of Section 102. (ECF No. 260.) In that Motion for Summary Judgment, however, Defendants instead argue that other general memory foam sales (not sales of the Pink Pad) anticipated the Patents-in-Suit. (See generally id.) Now, the Defendants effectively seek to reiterate this failed argument of invalidity based on the on-sale bar using the Pink Pads and a later priority date during this Motion in Limine. A Motion in Limine is not an appropriate vehicle for the late presentation of this new issue. Defendants' Fourth Motion in Limine is **DENIED**.

21

## XII. DEFENDANTS' FIFTH MOTION IN LIMINE

Before the Court is Defendants' Fifth Motion in Limine, filed on January 3, 2022. (ECF No. 374 at PageID 10349–51.) Plaintiffs filed a Response in Opposition on January 7, 2022. (ECF No. 388.) Defendants filed a Reply on January 12, 2022. (ECF No. 414 at PageID 10945.)

"Defendants move the Court to exclude any alleged claim of willful infringement." (ECF No. 374 at PageID 10349.) Defendants contend that any pre-suit infringement cannot be found willful because "Defendants did not know of the patents-in-suit prior to being served with the complaint," so "as a matter of law, Defendants['] alleged prelitigation infringement could not be willful." (Id.) Defendants also assert that Plaintiffs cannot claim post-suit willfulness because "Plaintiffs['] only evidence for post-suit willfulness is that Defendants continued to use the allegedly infringing products and methods after [they] learned of the patents-in-suit," and "[t]his is not sufficient egregious behavior to support a willfulness allegation." (Id. at PageID 10350.) Defendants further contend that they "had a reasonable belief that their conduct was non-infringing and that the patents were invalid." (Id.)

In response, Plaintiffs contend that "Defendant[s'] fifth motion in limine . . . is a *de facto* motion for summary judgment on the issue of willful infringement," so "[t]he Court should deny it for this reason, and also because it does not seek to preclude any specific evidence." (ECF No. 388 at PageID 10473.) Plaintiffs contend that "[t]he Court should also deny MIL No. 5 because it is overbroad." (Id. at PageID 10475.)

In reply, Defendants contend that the Motion "should be granted because Plaintiffs have failed to produce documents or uncover any probative evidence of Defendants' alleged willful activity, including Defendants having any knowledge of Plaintiffs' patents prior to the initiation of this lawsuit." (ECF No. 414 at PageID 10945.)

22

The Court agrees with Plaintiffs that the content of this Motion corresponds to summary judgment argument rather than a dispute as to the admissibility of any evidence. For this reason, the Court **DENIES** Defendants' Fifth Motion in Limine.

## XIII. DEFENDANTS' SIXTH MOTION IN LIMINE

Also before the Court is Defendants' Sixth Motion in Limine, filed under seal on January 3, 2022. (ECF No. 374 at PageID 10351–52.) Plaintiffs filed a Response in Opposition on January 7, 2022. (ECF No. 389.) Defendants filed a Reply on January 12, 2022. (ECF No. 414 at PageID 10945–46.)

Defendants contend that "[t]he Court should preclude any effort by Plaintiffs [to] present any evidence, testimony, argument or reference, or elicit testimony (e.g., from experts) that G&T Industries infringe[s] any method claims." (ECF No. 374 at PageID 10351.) Defendants assert that "[b]ecause Plaintiffs have provided no analysis and no evidence that G&T Industries market directly to hospitals and doctors for the use of the Accused Products, Plaintiffs cannot meet their burden of prov[]ing G&T Industries infringe the asserted method claims, and the Court should exclude any attempt by Plaintiffs to do the same at trial." (Id. at PageID 10352.)

In response, Plaintiffs contend that "there is ample evidence in the record for the jury to find that Defendant G&T Industries, Inc. ('G&T') induced infringement of the asserted method claims." (ECF No. 389 at PageID 10478.) Plaintiffs provide the following evidence as support that a jury could find G&T induced infringement:

> G&T knew of the Asserted Patents at least as early as November of 2016, when they received the complaint filed by Plaintiffs. The hospital and doctor end-users directly infringe the asserted method claims when they use the Accused Products to hold patients in the Trendelenburg position (for example). G&T shipped Accused Products directly to these hospitals and doctors. See **Exhibit 1** (PRIME00066359); **Exhibit 2** (Tr. Dep. Roland Grit), at 131:2-15. G&T even applied labels identifying the Accused Products as a "Trendelenburg O.R. Table

23

Pad." See Exhibit 3 (PRIME00252259-71); Exhibit 2, at 135:4-136:2. This shows that G&T knew the Accused Products they were shipping were going to be used to hold a patient in the Trendelenburg position, a use that infringes the asserted method claims. This is consistent with the opinions of Plaintiffs' experts that defendants have indirectly infringed the asserted method claims.

(Id. at PageID 10479.) (emphasis in original.)

In reply, Defendants contend that Plaintiffs have "fail[ed] to point to any evidence [their] experts relied upon *specific to G&T Industries* in their conclusory analysis of indirect infringement." (ECF No. 414 at PageID 10945.) (emphasis in original.)

The Court finds there is sufficient concrete evidence for Plaintiffs to make an argument at trial that G&T induces infringement. Further, much like Defendants' Fifth Motion in Limine, this Motion presents a case for summary judgment, and the time for summary judgment motions has already passed. For these reasons, the Court **DENIES** Defendants' Sixth Motion in Limine.

## XIV. DEFENDANTS' SEVENTH MOTION IN LIMINE

Also before the Court is Defendants' Seventh Motion in Limine, filed under seal on January 3, 2022. (ECF No. 374 at PageID 10352–53.) Plaintiffs filed a Response in Opposition on January 7, 2022. (ECF No. 381.) Defendants filed a Reply on January 12, 2022. (ECF No. 414 at PageID 10946.)

Defendants contend that "Plaintiffs should be precluded from referencing the presumption of validity." (ECF No. 374 at PageID 10352.) Defendants contend that "[r]eferences to the presumption confuse[] the jury and may cause the jury to hold Defendants to an even more exacting standard because jurors may not understand that the clear and convincing evidence standard *already includes* the presumption of validity." (Id. at PageID 10352–53.) (emphasis in original.) Defendants assert that "[t]he Court should also preclude Plaintiffs from suggesting or arguing that [they are] entitled to a 'heightened' presumption because the Patent Office confirmed some of

Plaintiffs' asserted patent claims in response to *ex parte* requests for reexamination." (Id. at PageID 10353.) Defendants contend that "[t]he Court's instruction on Defendants' burden to show invalidity by clear and convincing evidence adequately addresses the appropriate presumption." (Id.)

In response, Plaintiffs contend that "Defendants' invalidity arguments rely on prior art that has been twice-reviewed by the Patent Office. Under these facts, the jury should be allowed to hear evidence and argument about the presumption of validity." (ECF No. 381 at PageID 10426.) Plaintiffs contend that "[i]f this evidence and argument is precluded, the jury will not understand that Defendants may find it 'harder' to satisfy the 'clear and convincing' standard because they offer 'the same argument on the same reference that the PTO already considered.'" (Id. at PageID 10427.) (quoting Sciele Pharma Inc. v. Lupin Ltd., 684 F.3d 1253, 1260–61 (Fed. Cir. 2012).)

In reply, Defendants contend that the Motion "should be granted because, contrary to Plaintiffs' arguments, not all of the prior art at issue in this case has been considered by the PTO during prosecution or reexamination." (ECF No. 414 at PageID 10946.) As a result, Defendants contend that "allowing Plaintiffs to reference the presumption of validity with respect to some prior art references but not others would carry the significant risk of confusing the jury—risk that is avoided by the Court's instruction as to validity." (Id.) (citing Sciele Pharma, 684 F.3d at 1260.)

The Federal Circuit has held that the burden to prove invalidity is always clear and convincing evidence:

> As the Supreme Court explained in i4i, there is no heightened burden of proof when a reference was previously considered by the PTO, and no lowered burden of proof if a defendant raises a new reference or argument during litigation. Id. The burden does not suddenly change to something higher—"extremely clear and convincing evidence" or "crystal clear and convincing evidence"—simply because the prior art references were considered by the PTO. In short, there is no heightened or added burden that applies to invalidity defenses that are based upon references that were

before the Patent Office. The burden is always the same, clear and convincing evidence.

Sciele Pharma, 684 F.3d at 1260 (citing Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 108–10 (2011)). The Court's jury instructions will provide the appropriate standard for invalidity, and thus permitting either Party to assert its own standard at trial is unnecessary and likely to lead to confusion. Defendants' Seventh Motion in Limine is **GRANTED**.

## XV. DEFENDANTS' EIGHTH MOTION IN LIMINE

Before the Court is Defendants' Eighth Motion in Limine, filed under seal on January 3, 2022. (ECF No. 374 at PageID 10353–54.) Plaintiffs filed a Response in Opposition on January 7, 2022. (ECF No. 380.) Defendants filed a Reply on January 12, 2022. (ECF No. 414 at PageID 10946.)

Defendants contend that "[t]he Court should preclude misleading statements about the burdens of proof, including by comparing the burdens of proof to other areas of civil law or by implying a specific number or percentage requirement." (ECF No. 374 at PageID 10353.) Defendants contend that such statements would "confuse the jurors, imply a numerical or percentage requirement, and lead to the application of the incorrect legal standard." (Id. at PageID 10354.) (citing Fed. R. Evid. 403.)

In response, Plaintiffs contend that Defendants' Motion "unnecessarily asks the Court to solve a nonexistent problem." (ECF No. 380 at PageID 10422.) Further, Plaintiffs contend that the request in this Motion is overly broad and "would improperly restrain Plaintiffs' ability to use the useful and familiar rhetorical tool of analogy." (Id.)

In reply, Defendants contend that the Motion "should be granted with respect to the inflammatory statements about the burden of proof, as Plaintiffs agree not to present such at trial." (ECF No. 414 at PageID 10946.)

It is not clear why granting such a motion is necessary, as neither party intends to make inflammatory statements regarding the burden of proof, and it would not be appropriate for the Court to preclude all use of analogies. Defendants' Eighth Motion in Limine is **DENIED AS MOOT**.

## XVI.  DEFENDANTS' NINTH MOTION IN LIMINE

Also before the Court is Defendants' Ninth Motion in Limine, filed under seal on January 3, 2022. (ECF No. 374 at PageID 10354.) Plaintiffs filed a Response in Opposition on January 7, 2022. (ECF No. 383.) Defendants filed a Reply on January 12, 2022. (ECF No. 414 at PageID 10947.)

Defendants seek to "[p]reclude evidence, testimony, argument or reference insinuating that Defendants directly infringe the asserted method claims." (ECF No. 374 at PageID 10354.) Defendants contend that after the "Court found 'that Defendants do not directly infringe the Asserted Method Claims'" during summary judgment, at the Parties' "meet and confer on this issue Plaintiffs surprisingly stated that they intend to come forward with evidence that Defendants indeed do directly infringe the Asserted Method Claims." (Id.)

In response, Plaintiffs contend that Defendants' Motion is too broad because "[i]t would preclude [Plaintiffs'] appropriate use of evidence relevant to Plaintiffs' inducement claim, including videos and photographs of Defendants' demonstration of the Accused Products being used to hold patients in a Trendelenburg position." (ECF No. 383 at PageID 10435.) Plaintiffs contend that they "should be allowed to use this evidence to show Defendants' intent to induce hospitals and doctors to infringe the asserted method claims." (Id.) Further, Plaintiffs state that they "do not contend Defendants directly infringe the asserted method claims" and recognize that "the Court has already granted summary judgment on this issue." (Id. at PageID 10436.)

In reply, Defendants contend that "Plaintiffs should not be allowed to offer this evidence for the purposes of arguing or insinuating that Defendants directly infringe the asserted method claims in direct contravention of this Court's prior order." (ECF No. 414 at PageID 10947.)

Plaintiffs assert that they would only use this evidence to prove an element of induced infringement rather than as evidence of Defendants' direct infringement of the method claims. As a result, there does not appear to be an actual dispute here, and the Court **DENIES AS MOOT** Defendants' Ninth Motion in Limine.

## XVII. DEFENDANTS' TENTH MOTION IN LIMINE

Also before the Court is Defendants' Tenth Motion in Limine, filed under seal on January 3, 2022. (ECF No. 374 at PageID 10354–55.) Plaintiffs filed a Response in Opposition on January 7, 2022. (ECF No. 382.) Defendants filed a Reply on January 12, 2022. (ECF No. 414 at PageID 10947.)

Defendants contend that "[t]he Court should preclude Plaintiffs from presenting generalized evidence and arguments concerning any of Prime Medical's patent applications." (ECF No. 374 at PageID 10354.) Defendants contend that "[t]he introduction of such information would be confusing, irrelevant and would unduly prejudice Defendants." (Id. at PageID 10354–55.)

In response, Plaintiffs contend that Defendants' Motion "is presumably motivated by the fact [that] these applications were rejected in view of one of the Patents-in-Suit." (ECF No. 382 at PageID 10432.) Plaintiffs contend that "[t]his fact would be relevant here if Defendants are allowed to introduce evidence, testimony, or argument about their alleged independent invention of the Accused Products, which is the subject of Plaintiffs' Third Motion in Limine." (Id. at PageID 10432–33.) Plaintiffs state that "[i]f the Court grants Plaintiffs' motion, the Plaintiffs

28

would not need evidence, testimony, or argument about the Prime Medical patent applications, and MIL No. 10 should be denied as moot." (Id. at PageID 10433.)

On Reply, Defendants contend that the Court should still grant the Motion because "such evidence and arguments are not relevant to any issues in this case." (ECF No. 414 at PageID 10947.)

As the Court has granted Plaintiffs' Third Motion in Limine above, Plaintiffs have thus agreed not to introduce this evidence, per their Response to the instant Motion. As such, Defendants' Tenth Motion in Limine is **DENIED AS MOOT**.

**IT IS SO ORDERED**, this 9th day of February, 2022.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE